***********
The Full Commission reviewed the prior Decision and Order, based upon the record of the proceedings before Deputy Commissioner Gheen and the briefs and oral arguments before the Full Commission. The appealing party has not shown good grounds to reconsider the evidence; receive further evidence; rehear the parties or their representatives; or amend the Decision and Order, except for minor modifications. Accordingly, the Full Commission affirms the Decision and Order of Deputy Commissioner Gheen with minor modifications.
 ***********
The Full Commission finds as fact and concludes as matters of law the following, which were entered by the parties as:
 STIPULATIONS
1. Plaintiff was housed at Hoke Correctional Institution as of February 15, 2006. *Page 2 
2. On the same date, Plaintiff sustained a severe electric shock when a metal bed frame he was holding made contact with exposed wiring protruding from an unprotected electrical junction box.
3. Plaintiff suffered significant and lasting personal injuries due to the electrocution, including macular edema, atrophy in the size of his right arm, destruction of the water pockets within his joints, impaired use of his right hand, pain, swelling and inflammation.
4. John Bullock was serving as administrator of Hoke Correctional Institution, and all actions taken by him pertinent to this action were carried out in the course of his employment with Defendant, North Carolina Department of Correction (hereinafter "NCDOC").
 ***********
The following were admitted into evidence by the Deputy Commissioner, and by agreement of the parties, as:
 EXHIBITS • Stipulated Exhibit #1: Incident Report for February 15, 2006.
 • Stipulated Exhibit #2: Hoke Correctional Institution Standard Operating Procedures, Chapter III, § .3010 (Institution Inspections).
 • Stipulated Exhibit #3: Hoke Correctional Institution Standard Operating Procedures, Chapter III, § .3000 (Duties of a Correctional Officer).
 • Stipulated Exhibit #4: North Carolina Department of Correction, Division of Prisons Policy Procedures, Chapter F, § .1200 (Inspections).
 • Stipulated Exhibit #5: North Carolina Department of Correction, Division of Prisons Policy Procedures, Chapter F, § .1300 (Custody and Security). *Page 3 
 • Stipulated Exhibit #6: North Carolina Department of Correction, Division of Prisons Policy Procedures, Chapter E, § .1500 (Safety Policy).
 • Stipulated Exhibit #7: Facility Maintenance Work Orders for Hoke Correctional Institution.
 • Stipulated Exhibit #8: Photographs of Hoke Correctional Institution.
 • Stipulated Exhibit #9: Records of Medical Treatment Provided to Plaintiff.
 • Stipulated Exhibit #10: Defendant's Responses to Grievance filed by Plaintiff on March 21, 2006.
 ***********
Based upon all of the competent evidence of record and reasonable inferences flowing therefrom, the Full Commission makes the following:
 FINDINGS OF FACT
1. Plaintiff was incarcerated with NCDOC in December 2005. As of February 15, 2006, he was housed at Hoke Correctional Institution on the second floor of B-wing.
2. Several inmates in addition to Plaintiff resided in a dormitory setting, each inmate being assigned an upper or lower bunk bed made from metal frames.
3. On February 16, 2006, Plaintiff entered his living area. Another inmate was attempting to retrieve a chair from a corner space. To retrieve the chair, it was necessary to partially move a nearby bunk bed a short distance. Plaintiff assisted the inmate retrieving the chair by attempting to move the bunk bed back into its original position.
4. As Plaintiff moved the bunk bed back into position the metal frame came into contact with exposed electrical wiring that protruded from an uncovered electrical wall outlet *Page 4 
adjacent to the metal bed frame. When the metal frame came into contact with the electrical wiring, Plaintiff and the other inmate both sustained an electric shock.
5. The parties stipulate that Plaintiff sustained severe and permanent injuries as a consequence of the electric shock.
6. The evidence establishes that inmates at the correctional facility often tamper with electrical outlets and other fixtures.
7. NCDOC's administrative regulations protect against inmate tampering by requiring Correctional Officers to patrol the living areas at Hoke Correctional Institution with the duty to regularly inspect for safety hazards such as the one that caused Plaintiff's injuries. In particular, NCDOC's Policy Procedures, Chapter F, Section .1200(a) provides that the officer in charge of each facility with in the Division of Prisons
 . . . will conduct a daily inspection of the facility for the purpose of detecting and eliminating all hazards to the security, health, safety and welfare of staff and inmates at the facility. No condition which constitutes as threat to the safety or security of the prison facility will be permitted to exist. . . . Both custodial and program staff members will be responsible for the prevention of serious security hazards. Carelessness or inefficiency that might create a threat to safety or security will be cause for appropriate disciplinary action.
8. The cover for the outlet had been completely removed and was not subsequently recovered. The electrical wires extended outward beyond the face edge of the outlet. The circumstantial evidence is convincing that the condition of the receptacle was the product of deliberate tampering.
9. The direct evidence and circumstantial inferences therefrom do not permit any finding as to the length of time that the electrical wiring had been exposed before causing Plaintiff's electrocution. Plaintiff introduced evidence that Hoke Correctional Institution, one of *Page 5 
the NCDOC's older institutions, was poorly maintained over the course of several months during which the incident took place, specifically his testimony that other electrical wiring in the facility was exposed. NCDOC maintenance records demonstrate a reasonably responsive system of inspection and repair of known defects by NCDOC staff.
10. Plaintiff also testified that NCDOC employees never conducted inspections for hazards in his dormitory. Plaintiff's testimony, if credible and convincing, would establish that NCDOC employees did not make the inspection required by NCDOC's Policy Procedures, Chapter F, Section .1200(a). Plaintiff's testimony, standing alone, is not of sufficient probative weight to accept the testimony as a fact. It is again noted that NCDOC's maintenance records demonstrate a reasonably responsive system of inspection and repair of known defects by NCDOC staff.
11. Plaintiff proffered testimony compelling a finding that the screws used in the receptacle in question are more prone to tampering compared to other types of screws that can be used to secure a wall outlet cover. No testimony was offered that the use of more tamper resistant screws is required by law or applicable building codes, or that failure to employ such screws is negligent.
12. Plaintiff had no prior knowledge, either actual or constructive, of any danger posed by moving the bunk bed.
13. No employee of the NCDOC possessed actual knowledge that the electrical wiring from the wall outlet was exposed. Additionally, Plaintiff has proffered no compelling evidence tending to show whether NCDOC's employees should have been aware of this danger before Plaintiff's injury.
 *********** *Page 6 
Based upon the foregoing stipulations and findings of fact, the Full Commission reaches the following:
 CONCLUSIONS OF LAW
1. Under the State Tort Claims Act (hereinafter "Act"), "negligence is determined by the same rules as those applicable to private parties." Bolkhir v. N.C. State Univ.,321 N.C. 706, 709, 365 S.E.2d 898, 900 (1988). In order to prevail in a claim filed pursuant to the Act, a plaintiff must allege and prove the four common law elements of negligence: (1) that one or more employees or agents of the defendant owed the plaintiff a cognizable duty; and (2) breached this duty; and (3) that this breach proximately caused (4) injury to the plaintiff. Id.
2. "In order to prove that the [defendant] is negligent, plaintiff must show that the defendant either (1) negligently created the condition causing the injury; or (2) negligently failed to correct the condition after actual or constructive notice of its existence."Roumillat v. Simplistic Enterprises, Inc.,331 N.C. 57, 64, 414 S.E.2d 339, 342-43 (1992).
3. "Generally, a defendant's negligence will not be presumed from the mere happening of an accident, but, on the contrary, in the absence of evidence on the question, freedom from negligence will be presumed." E.g., Etheridge v. Etheridge,222 N.C. 616, 24 S.E.2d 477, 479 (1943). Additionally, the mere existence of a condition that causes injury is not negligence per se, and occurrence of injury does not raise presumption of negligence. Frendlich v. Vaughan's Foods of Henderson, Inc.,64 N.C. App. 332, 307 S.E.2d 412 (1983).
4. The Full Commission finds that plaintiff has failed to prove, by a preponderance of the evidence, that an employee of NCDOC created the dangerous electrical outlet or knew, or should have known, the dangerous condition. Accordingly, Plaintiff is not entitled to recover under the Tort Claims Act, and his claim must be dismissed. N.C. Gen. Stat. § 143-291. *Page 7 
 ***********
Based upon the foregoing stipulations, findings of fact, and conclusions of law, the Full Commission enters the following:
 ORDER
1. Plaintiff's claim is hereby DISMISSED WITH PREJUDICE.
2. No costs are taxed to Plaintiff, who was permitted to proceedin forma pauperis.
This __ day of May 2010.
 S/___________________ STACI T. MEYER COMMISSIONER
CONCURRING:
 S/___________________ LAURA KRANIFELD MAVRETIC COMMISSIONER
 S/___________________ DIANNE C. SELLERS COMMISSIONER *Page 1